No. 22,649.

R. H. LONGHOFER et al., *Appellees,* v. J. B. SCHICK and BERTIE SCHICK, *Appellants.*

SYLLABUS BY THE COURT.

1. MUTUAL TELEPHONE LINE—*Unincorporated—Service Lawfully Transferred to Another Exchange.* On the facts stated in the opinion, *held,* that a member of an unincorporated voluntary association formed to maintain a mutual party telephone line, which association has no constitution, by-laws, or rules regulating the manner of calling meetings, is bound by the action taken at a meeting of the majority of the members transferring the service to another exchange, although it deprives such member of the right to service through the former exchange.

2. SAME—*Interference with Use of Line—Injunction.* Evidence considered and held sufficient to sustain a judgment enjoining the defendants from interfering with the plaintiffs' use of a telephone line.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed November 6, 1920. Affirmed.

*W. H. Carpenter,* of Marion, and *Edwin Anderson,* of Council Grove, for the appellants.

*C. S. Crawford,* of Abilene, and *W. J. Pirtle,* of Council Grove, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The appeal is from an injunction restraining the defendants, J. B. Schick and his family, from using a mutual telephone line or interfering with the plaintiffs' use thereof.

For a number of years prior to May 1, 1917, the defendant, J. B. Schick, and the plaintiffs, R. H. Longhofer, D. E. Ramsey, A. C. Orr, and Fred Adams, together with August Herpick, John Herpick, Fred Stalter, and Sophia Bruckner were joint owners of a mutual telephone line which extended from the town of Delavan, in Morris county, for a distance of about six miles to the residence of D. E. Ramsey. Ramsey lived about two miles southeast of Latimer, where there was another switchboard and exchange, but with which the Ramsey line was not connected. Each of the joint owners, or his predecessor in interest, had contributed to the cost of constructing the line and keeping it in repair.

On May 17, 1917, Ramsey, the director of the line, called a meeting of some of the owners, which was attended by Ramsey, Orr, Longhofer, Adams, the defendant Schick, and the son of Mrs. Bruckner. At this meeting, after some discussion, a motion was adopted to extend the line to Latimer and connect with the exchange there, discontinuing connection with the Delavan exchange. The defendant Schick opposed the motion but did not vote either way. A few days later the line was extended to Latimer and connection with the Delavan exchange discontinued. The defendant Schick lived about eighty rods south of Ramsey and the cutting of the line south of his place prevented him from using the switchboard at Delavan. He was not permitted to use the exchange at Latimer without a payment of ten cents toll for each call, which he refused to make. There was trouble on the new line running into Latimer about this time and tests made by linemen indicated that there was interference with the line at or near Schick's place, and the line running from his house to the main line was cut. He restored the connection and plaintiffs brought the action to enjoin him from interfering with the line. The trial court found the facts in favor of the plaintiffs.

The first contention is that the court erred in overruling the demurrer to the petition. The appeal was not taken until more than six months had elapsed and it is too late to question the ruling on the demurrer. (*Smith v. Griffith,* 105 Kan. 357, 358, 184 Pac. 725.)

The principal contention is that there was no evidence to sustain the finding and judgment. From an agreed statement of the facts made to the trial court it appears that the association to which the plaintiffs and defendants belonged had no interest in or control over the exchange either at Delavan or Latimer. These were owned and controlled by voluntary associations composed of directors selected by the people interested in the exchanges. Each party line, however, was a separate and distinct association and was managed by a director selected by the owners of the line. The party line to which the plaintiffs and defendants originally belonged had no constitution, no by-laws, no rules or order of business, no specific time for any meeting, no rules for calling a meeting or conducting one; no records were required to be kept and none were kept. Whenever the owners of a party line desired to have a meeting they were notified and got together at some convenient place. C. W. Norman, who was president of the Latimer exchange but not a member of the association owning the Ramsey line, presided at the meeting at which it was arranged to extend the Ramsey line to Latimer and to cut the Delavan line after the extension was completed.

The contention of the defendants that the judgment deprived them of property rights cannot be sustained, since neither the party line as an association nor its individual members had a vested right to the use of either exchange.

The statement of facts agreed to at the trial left only two issues of fact to be determined. First, whether the defendants were bound by the action of the meeting ordering the change in the line, and second, whether the defendants had interfered with the plaintiffs' use of the line. The most that can be said is that there was some conflict in the evidence. There was very little conflict with respect to the meeting and the calling of it. It is conceded that there were five of the nine owners of the line at the meeting without counting young Bruckner, and no one objected to his presence or to his par-

ticipation in the meeting. Schick, on cross-examination, admitted that he did not object to the young man voting but objected to his voting with the other crowd. His testimony was that "before we voted, I wanted him to vote my way." It is true, Mrs. Bruckner testified, that since her husband's death, a year before, she considered herself one of the joint owners of the line; that she had no notice of the meeting and had not authorized her son to represent her there. He was one of the heirs of the estate and lived in the family. In the opinion the trial court commented upon these facts and the further fact that at no time since the change was made had any of the members who were not present at the meeting asserted by legal action or otherwise that the meeting was not legal, and that the only protest was made by the defendant Schick, who was bound by the action taken at the meeting because he was present and participated therein.

Whatever conflict in the evidence there was has been resolved in favor of the plaintiffs. There was no error in the admission of the constitution, by-laws and rules of the Latimer exchange, and in our opinion the trial court was right in holding that from the time the change was made each member of the association was bound to observe the rules and regulations of the Latimer exchange in order to be entitled to the service, and was entitled to such service upon compliance with such rules and regulations. There was a sharp conflict in the evidence upon the issue whether the defendant and his family had interfered with the operation of the line after the connection was made with the Latimer exchange, but the circumstantial evidence and statements made by one of the defendants were sufficient to sustain the finding of the court that the defendants had wrongfully interfered with the operation of the line.

We find no error in the record, and the judgment is affirmed.